UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KINGDOM OF GOD GLOBAL
CHURCH,

       Petitioner,

                                      Case No.
                                      Honorable

v.

UNITED STATES OF AMERICA,

       Respondent.

_____/

## PETITION FOR IMMEDIATE RETURN OF PROPERTY

**I.     INTRODUCTION**

The Kingdom of God Global Church (hereinafter the "Church"), a not-for-profit religious organization, respectfully moves this Court for the Immediate Return of Its Property as follows. First, the Church is entitled to the return of its seized property as equitable relief because it does not have an adequate forum to seek their return. Second, the continued retention of the Church's assets is causing substantial hardship to a legitimate business' operation. Third, the seizure implicates heightened constitutional and statutory protections under the First Amendment and Religious Freedom Restoration Act, requiring the government to demonstrate a compelling interest and least restrictive means before continuing to burden the Church's

religious exercise through retention of its assets as well as the disruption of its member's ability to freely practice their chosen religion.

## II.     FACTUAL BACKGROUND

Kingdom of God Global Church ("KOGGC") is a religious non-profit, duly organized in the State of Missouri and operating within the jurisdiction of this Court. It has been operating for over 11 years and in four states, including Michigan. The Church has worldwide promotion and attention; its services are both in person and on television, online streaming, Facebook, Instagram and other social media. The Church is governed by a board of directors and employs law firms, accountants and other reputable professionals to assist them in their lawful business. The Church ministries operate globally and has property in Taylor, Michigan, Tampa, Florida, St. Louis, Missouri and Houston, Texas.

The Church operates physical locations housing volunteers as part of the ministries of the Church. The Church maintains the physical buildings that house the ministries by paying expenses such as mortgages, utilities, etc. with donations. The Church maintains the physical buildings to house and feed individuals studying at the ministry with donations. The Church funds its church locations, prayer centers, its television media ministry, its feeding programs and all of its missionary programs with donations. The legitimate donations received are deposited into the seized Chase Accounts and used to conduct the business of the Church.

The deprivation of the funds seized by the government has significantly impaired the Church's ability to conduct its work, including but not limited to services, religious education, and community outreach programs. It also has hampered the Church's ability to pay the normal expenses of maintaining the nine properties it owns. Despite the Church's non-defendant status in the related criminal matter, the government has retained possession of its assets without demonstrating that the property itself is subject to forfeiture. The Church now seeks the return of its property asserting its right as an aggrieved entity by the deprivation of property and invoking constitutional and statutory protections afforded to religious organizations.

On July 23, 2025, the Grand Jury issued an Indictment against the Pastor of the Church, David Taylor and the executive director of the Church, Michelle Brannon, in *US v. Taylor and Brannon,* case no. 25-20560 (Berg, J.) [ECF no. 1][1] (hereinafter the "Criminal Action"). Although both defendants in the Criminal Action, were involved in the operations of the Church, the Church continues to minister, hold services, lawfully raise money, do charitable work and operate its business.

On or about August 22, 2025, the government seized over $4.2 million of the Church's funds held in five bank accounts with Chase Bank, along with valuable

---
[1] All ECF references are to the related Criminal Action

precious metals, numerous vehicles, cash, jewelry, money orders and designer clothing. The government also filed *lis pendens* on nine parcels of the Church's real property.

The bank accounts were subject of seizure warrants. The Affidavit supporting the seizure of the Chase Bank accounts is not available for review as they are subject to a protective order and the government refuses to allow any publication of them other than to the defendants' legal teams. The other assets were seized pursuant to search warrants executed at the following locations: 14380 North Freeway in Houston Texas on or about August 18, 2025; 20320 Superior Road in Taylor, Michigan on or about August 22, 2025; and 706 Guisando De Avila in Tampa, Florida on or about August 20, 2025.

From the Houston building, the government seized and listed the following assets: Gray safe w/silver bars; Package with four silver coins; and envelope with three silver coins. From the Taylor building, the government seized and listed the following assets: Bulk coins, Jewelry, Gold color metals and coins, Silver color coins, $2,435 in cash, $4,306.45 US Currency, $1,825,000 Iraq dinars, $1,880 Australian dollars, $1,570 EUROS, Jewelry, gold colored coins, silver colored coins. From the Tampa Florida building, the government seized and listed the following assets: Australian currency $50, $3,100 in US Currency; Cash in black bag, Checks and money orders from multiple individuals, 21 money orders/personal check and

4

envelopes to KOGGC, US Currency $4,030.00, Foreign currency (listed twice), Assorted jewelry (listed twice), Gold coin $20.00, Various jewelry, and various designer clothing and luggage (hereinafter "Other Seized Assets").

All of the seized funds in the Church's Chase Bank accounts and the precious metals, cash, jewelry, money orders and designer clothing and luggage are the subject of this Motion seeking their immediate release.

Notably, the Church itself is not named as a defendant in the Criminal Action, nor has it been charged with any wrongdoing. The Indictment itself alleges limited transactions involving unlawful proceeds, however, there is no direct allegation linking the defendants' conduct to the five Chase Bank accounts seized.

On August 27, 2025, the government filed a Bill of Particulars providing notice of the assets it seeks to forfeit. [ECF no. 5]. However, the seized property constitutes the lawful assets of the Church, acquired through voluntary donations, offerings, and other legitimate means consistent with its religious mission. The Bill of Particulars fails to list the Other Seized Assets.

The Church maintains records evidencing its ownership and lawful possession of the seized property, including bank account statements and records from its various payment channels like PayPal, Givelify, Zelle, authorize.net, and Vanco. Individuals also provide in person donations in the form of cash, jewelry and precious metals.

The Church maintains logs related to the donations it receives and the individuals making the donations. In total, other than the members of the Board of Directors, there have been 30 parishioners who worked in the ministry from 2016 until 2023. The 30 parishioners raised approximately $1.3 million during that seven-year period. The government's indictment alleges that there are seven "victims" of the defendant's criminal conspiracy activity. [ECF no. 1 PageID 16]  So, even without specifically knowing who the individuals identified as "victims" are, these seven people of the total 30 could not have collected the over $4.2 million that was seized.

### III.    LEGAL ARGUMENT

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. This is a safeguard to avoid unreasonable and arbitrary invasions by the government. *See Carpenter v. U.S.* 585 U.S. 296, 303; 138 S. Ct. 2206 (2018).

#### A.    Court's Equitable Power to Release Untainted Seized Assets

The most common approach to seek return of seized property is pursuant to Fed. R. Crim. P. 41(g), that states any "person aggrieved by an unlawful… seizure of property… may move for the property's return." The Sixth Circuit has recognized that non-defendants have standing to file motions under this rule holding that they

are "essentially a civil equitable proceeding." *United States v. Duncan*, 918 F.2d 647 (6th Cir. 1990). Petitioner acknowledges that Rule 41g provides for an action for return of property when the asset is the subject of a pending forfeiture action. However, it is patently unfair to limit an innocent third party's rights to a legal remedy when it is suffering hardship from the government's action.

Here, the Affidavits supporting the Seizure Warrants of the bank accounts are not available except under a Protective Order issued in the Criminal Action, again limiting a third parties' ability to challenge its basis for seizure. Turning then to the Indictment filed in the Criminal Action [ECF no. 1] to challenge the government's seizures, it charges the defendants with violations as follows: Count One – Conspiracy to Commit Forced Labor; Counts Two through Nine – Forced Labor naming specific victims and time frame for their forced labor; Count Ten – Money Laundering Conspiracy; and a Criminal Forfeiture Allegations based on both 18 USC §982 and 18 USC §1594(d).

Focusing on the government's legal basis to forfeit the Church's Chase Bank Accounts and other Assets in the Criminal Action, statutes 18 U.S.C. §982 and §1594(d) similarly reference forfeiture of two categories of property: property that is the proceeds of the criminal activity or property that is involved in the criminal offense.

### 1. The Indictment Fails to Allege That the Seized Assets are Proceeds from a Crime.

The government does not allege that the Church's Chase Bank accounts or the Other Seized Assets are direct proceeds of the criminal activity in the Indictment. The Indictment fails to identify how the funds and other assets seized are actually connected to the alleged crimes. The Indictment in Count One alleges a forced labor conspiracy from April 2013 until July 2025, yet, the factual allegations that provide the basis for the conspiracy in ¶39 and ¶40 of the Indictment end in 2022. The Indictment in Counts Two through Nine describes approximate dates of forced labor beginning in 2010 (Victim 8) until 2023 (Victims 2 and 3). In Count Ten, the Indictment alleges a money laundering conspiracy, pursuant to 18 USC §1956(h) from 2018 through July 2025.

The majority of the financial transactions cited were conducted between 2018 through 2021 with the exception of the 2024 purchase of the Rolls Royce Cullinan and some automotive detailing. The total of the transactions described in ¶53e is approximately $690,000. If the 2024 transactions are backed out, then the total amount of the transactions conducted are closer to $450,000.

Further, there is no dispute that the Chase Accounts are owned by the Church and <u>not</u> the Defendants. The Indictment does not specifically describe any connection between the financial transactions and the seized bank accounts. Even if there is some connection alleged in the Affidavits that support the seizure warrants,

8

the Indictment does not allege sufficient allegations to support the seizure of $4.2 million as all of 30 individuals working for the Church only garnered $1.3 million in donations over seven years.

Additionally, claiming that the funds in the bank account are direct proceeds from any crime in the seized bank accounts in 2025 is tenuous, at best, since funds are fungible: money in the accounts in 2025 is not the same money that was generated by the alleged crime in 2014, 2015 up to 2023.  There is no dispute that millions of dollars are deposited into the Chase accounts monthly due to the tremendous amount of donations received. Likewise, there are millions of dollars moving out of the very same accounts. Since there is no tracing of proceeds into or out of the seized accounts in the Indictment, there cannot be an allegation of directly tainted proceeds in any of the Chase accounts seized.

Regarding the Other Seized Assets, there are no allegations in the Indictment to connect them to criminal activity. The seizure of the jewelry, precious metals, cash and clothing were not assets received electronically and are without dates of receipt or connection to the victims' donations received during their alleged forced labor.

### 2. The Indictment Fails to Allege That the Seized Assets Were Involved in a Crime.

Turning now to whether the government has sufficient allegations to prove that the bank accounts, precious metals, cash, jewelry, money orders and designer

clothing are property "involved in" the forced labor or money laundering conspiracy, the government fails again to establish a connection between the seized assets and the alleged crimes.

The Indictment makes no allegation that directly connects the Chase Bank accounts or the other seized assets to the forced labor conspiracy, the reason being that the bank accounts have no involvement in the alleged crime. In contrast, the government also filed lis pendens on seven buildings in which they claim the forced labor occurred. Superficially, that may be a colorable claim. However, there are no allegations connecting the seized Chase accounts and the other Seized Assets to the forced labor conspiracy.

Regarding the money laundering conspiracy and the seized Chase Bank accounts, the issue is whether the seized bank accounts were "involved in" the crime. As provided in the Indictment at ¶53e, the total value of the transactions involved in the money laundering conspiracy is less than $700,000, nowhere near the $4.2 million that was seized. The Indictment does not provide the framework or basis to allege that any more than $700,000 can be subject to the Court's jurisdiction while the criminal matter is pending, and it cannot. The only direct proof the Indictment for forfeiture relates to is the purchase of the cars, boats, food and detailing/protecting the vehicles. (¶53e).

Therefore, the immediate release of the untainted funds held in the Church's Chase accounts should be ordered.

Regarding the Other Seized Assets, like the bank accounts, there are no allegations in the Indictment to connect the purchase or donation of the cash, jewelry, clothing or precious metals to the money laundering conspiracy. Therefore, like the accounts, their immediate release should be ordered.

### B. Release of the Seized Assets is Appropriate to Avoid Substantial Hardship for the Church

18 U.S.C. § 983(f) provides a means for a defendant to release property due to hardship on its business found in forfeiture law. While technically, the Church may not fall exactly under the protection of this statute, the guidelines and rationale in this provision should be applied to the government's seizure of the Church's assets. The rationale for this application is supported by the fact that Congress could not have intended to foreclose third parties from bringing a hardship petition in the scenario in which their assets are seized but without them being named a defendant to the criminal proceedings.

Hardship petitions are adjudicated *before* any forfeiture determination is made. Allowing the Church to follow the statute as a guideline in this action aligns with the intent of Congress to allow the release of certain funds, where substantial hardship is shown, *even if* the property is subject to forfeiture. It is not logical that

third parties must wait until the end of criminal proceedings (which could be years) and suffer the continuing hardship Congress intended to eliminate with 983(f).

Therefore, under 18 U.S.C. §983(f)(1) to obtain immediate release of funds, the Church must demonstrate that it has:

> A) possessory interest in the property; B) sufficient ties to the community to provide assurance that the property will be available at the time of the trial; C) the continued possession by the Government pending the final disposition of the forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working or leaving an individual homeless; D) the claimant's likely hardship from the continued possession by the government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed or transferred if it is returned to the claimant during the pendency of the proceeds; and E) none of the conditions set forth in paragraph (8) applies.

Here, the Church meets all of these elements and it is the title owner of the seized bank accounts; it has ties to the community to maintain the Church's business; the continued possession of its funds by the government will cause a substantial hardship on the Church by preventing its functioning as it did before the seizure of the funds; the Church's hardship outweighs the needs of the government; and none of the conditions are excepted as provided below.

None of the factors in §983(f)(8) would defeat the Church's claim for relief as follows: the property is not contraband; although the property is funds in a bank account, they are assets of a legitimate business that accepts funds as donations to be used for Church purposes and events (983(f)(8)(A)); the property is not evidence

of a crime (983(f)(8)(B)); the property is not suited for illegal use (983(f)(8)(C); the property cannot be used for further criminal acts. (983(f)(8)(D)).

Here, in addition to operating its business, the Church is responsible for mortgages and other debt related expenses that it is unable to pay without these assets. Therefore, due to the substantial hardship that the Church is experiencing in the operation of its legitimate business that was caused by the government's seizure of $4.2 million of its funds, these funds should be released.

### C. The Seizure of Church's Assets Implicates Substantial and Heightened Constitutional and Statutory Protections

#### 1. First Amendment Protections

The First Amendment to the United States Constitution explicitly protects religious freedom, stating that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." US Const. Amend. 1. This fundamental constitutional protection safeguards religious organizations from undue government interference with their religious practices and activities. The seizure of this Church's assets directly implicates these First Amendment protections by impairing the Church's ability to conduct worship services, religious education, charitable work, and community outreach. The Supreme Court has held that the loss of "First Amendment freedoms, for even [a] minimal period[] of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976). This is grounded

in the principle that the loss of constitutional rights, even for minimal periods of time, constitutes harm that cannot be adequately remedied through monetary damages or other measures.

### 2. Religious Freedom Restoration Act Protections

Beyond constitutional protections, the Religious Freedom Restoration Act (RFRA) provides statutory safeguards for religious exercise. RFRA prohibits the government from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability," unless the government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 USC § 2000bb-1, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 134 S. Ct. 2751 (2014).

For purposes of RFRA, the term "government" includes "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." 42 USC § 2000bb-2. The "exercise of religion" means "religious exercise, as defined in section 8 of the Religious Land Use and Institutionalized Persons Act of 2000." 42 USC § 2000bb-2, 42 USC § 2000bb-2. This broad definition encompasses the various religious activities and functions performed by the Church.

RFRA provides a two-step burden-shifting analysis: "First, a claimant must demonstrate that complying with a generally applicable law would substantially burden his religious exercise. Upon such a showing, the government must then establish that applying the law to the burdened individual is the least restrictive means of furthering a compelling government interest." *EEOC v. R.G., 884 F.3d 560* (6th Cir. 2018). The Church has demonstrated that the seizure of its assets substantially burdens its religious exercise, shifting the burden to the government to justify this burden under strict scrutiny to prove that the retention of the Church's assets "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *See Doster v. Kendall*, 48 F.4th 608 (6th Cir. 2022). *See also Burwell v. Hobby Lobby Stores, Inc.*, 573 (2014). The government cannot rely on general interests such as law enforcement or asset preservation. It must demonstrate a <u>specific compelling interest</u> to retain the Church's seized assets.

Moreover, even if the government can demonstrate a compelling interest, it must also show that continued retention of all the church's assets is the *least* restrictive means of furthering that interest. 42 U.S.C. §200bb-1. Given these heightened protections, the government must demonstrate that it has considered and rejected less restrictive alternatives to the complete seizure of the Church's assets. Such alternatives might include returning assets not directly connected to the alleged

criminal activity, releasing funds necessary for the Church to continue its functions, or establishing a supervised account that allows for the continued use of the funds for religious activities while preventing misuse.

Here, the government's seizure of the Church's assets substantially burdens its religious exercise by preventing or impeding worship services, limiting religious education programs, restricting charitable and community outreach activities, and impeding other faith-based activities central to the church's mission. These activities constitute core religious exercises protected by both the First Amendment and RFRA. The government's retention of the church's assets threatens its constitutional rights and creates ongoing harm that cannot be fully compensated for by monetary damages or other measures. Therefore, pursuant to the Constitution and RFRA, the government's continued retention of the Church's assets should not continue and the funds should be released.

## IV. CONCLUSION

For the reasons stated herein, the Church's Motion for Immediate Release of the Seized Assets should be granted and the government should immediately release all of the funds held in the Chase Bank Accounts and all of the precious metals, jewelry, cash and clothing in its possession.

                                            Respectfully submitted,

                                            /s/Jorin G. Rubin
                                            JORIN G. RUBIN
                                            Rubin Frampton
                                            Attorney for Kingdom of God Global Church

Date: December 30, 2025              jorinrubin@comcast.com