UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                Plaintiff,               Case No. 25-mc-51526

vs.                            Honorable Terrence G. Berg

David Taylor et al.,

                Defendants,

Kingdom of God Global Church,

                Petitioner.

---

**Government's Combined Opposition and Brief in Response to
Kingdom of God Global Church's Petition for Immediate Return of Property**

---

The United States respectfully submits this response to the Kingdom of God Global Church's ("KOGGC") Petition for Immediate Return of "[a]ll of the seized funds in the Church's Chase Bank accounts and the precious metals, cash, jewelry, money orders and designer clothing and luggage." ECF No. 1, PageID.5.

## FACTUAL BACKGROUND

Defendant David Taylor is the original founder and leader of KOGGC. Defendant Michelle Brannon was Taylor's second in command as the Executive Director of KOGGC. Together, since on or about 2013, Taylor and Brannon

1

compelled the labor of individuals who joined their organization by prohibited means including sleep deprivation, food restrictions, forced "repentance," physical assaults, threats of divine judgment in the form of sickness, accidents, death, and eternal damnation, and threats of these actions. Until their arrests on August 27, 2025, Taylor and Brannon operated call centers that solicited donations purportedly to support the operations and ministry of KOGGC. Call centers were the main source of revenue for KOGGC and its predecessor, Joshua Media Ministries International (JMMI). KOGGC/JMMI has operated call centers in Michigan, Missouri, Florida, and Texas. In addition, Taylor compelled the forced labor of his personal servants, known as "armor bearers," in North Carolina.

Taylor and Brannon's forced labor scheme resulted in KOGGC/JMMI receiving millions of dollars in donations each year through the call centers, much of which Taylor used to purchase luxury properties, luxury cars, gold, jewelry and designer items. Since 2014, KOGGC/JMMI received approximately $50 million in donations.

## PROCEDURAL BACKGROUND

On July 23, 2025, a federal grand jury returned an Indictment charging David Taylor and Michelle Brannon with Conspiracy to Commit Forced Labor, Forced Labor, and Money Laundering Conspiracy. Case No. 25-cr-20560 ("Criminal Case"), ECF No. 1. These charges provide for criminal forfeiture under

18 U.S.C. § 1594(d)(1) and (2) and 18 U.S.C. § 982(a)(1). The Indictment contains forfeiture allegations. Criminal Case, ECF No. 1, PageID.20-22.

Between August 18 and August 25, 2025, the government obtained search and seizure warrants for locations in Michigan, Missouri, Texas, Florida, and North Carolina. Six magistrate Judges found probable cause to believe that evidence of criminal activity would be found at the locations to be searched. On August 22, 2025, the government also obtained seizure warrants from Magistrate Judge Kimberly Altman in the Eastern District of Michigan for the seizure of numerous assets, including six Chase Bank accounts, five vehicles, a Bitcoin wallet, and a boat. Judge Altman found probable cause that the property to be seized was traceable to criminal activity, specifically that the property to be seized constituted proceeds or property that facilitated forced labor or property involved in money laundering. The Affidavits in support of the search and seizure warrants were filed under seal to avoid compromising an ongoing investigation. The government executed these warrants on August 27, 2025.

The government filed a First Forfeiture Bill of Particulars on August 27, 2025, to provide notice of the specific property the government intends to forfeit upon conviction. Criminal Case, ECF No. 5, PageID.28-36. The First Forfeiture Bill of Particulars identified numerous assets, including the following assets, which are the subject of KOGGC's Petition for Immediate Return:

3

1. All funds on deposit in Chase Bank Account Number ending 6655 in the name of The Kingdom of God Global Church;

2. All funds on deposit in Chase Bank Account Number ending 6671 in the name of The Kingdom of God Global Church;

3. All funds on deposit in Chase Bank Account Number ending 7697 in the name of The Kingdom of God Global Church;

4. All funds on deposit in Chase Bank Account Number ending 7169 in the name of The Kingdom of God Global Church;

5. All funds on deposit in Chase Bank Account Number ending 2679 in the name of The Kingdom of God Global Church.

## **ARGUMENT**

The Petition seeks return of seized property pursuant to: (1) Federal Rule of Criminal Procedure 41(g), (2) based on hardship under 18 U.S.C. § 983(f), and (3) based on violations of the First Amendment and the Religious Freedom Restoration Act (RFRA). For the reasons stated below, each of these arguments fails and the Petition should be denied.

### **A. The Motion for Return of Property Should be Denied**

#### **1. Rule 41(g) Relief is Not Available Because 21 U.S.C. § 853(k) Provides an Adequate Remedy at Law**

The government seized property as part of a criminal case. KOGGC seeks to intervene in that case as a matter of equity under Federal Rule of Criminal Procedure 41(g). ECF No. 1, PageID.1, 6. Rule 41(g) provides that "a person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." However, it is well-settled that a

Rule 41(g) motion is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction. *United States v. Search of Music City Mktg., Inc*., 212 F.3d 920, 923 (6th Cir. 2000) (absent a criminal indictment or other proceeding a Rule 41 motion is a civil proceeding in equity). "Under standard equity doctrine, where there is an adequate remedy at law it must be pursued." *Shaw v. United States*, 891 F.2d 602, 603 (6th Cir. 1989). Here, because the underlying criminal matter has been indicted and the government seeks criminal forfeiture, the law requires KOGGC to adjudicate its interests in an ancillary proceeding under § 853(n). *Brown v. United States*, 692 F.3d 550, 552, 553 (6th Cir. 2012) (§ 853(k) bars third party from using Rule 41(g) to complain that government improperly included forfeiture in a criminal case).

The law bars third parties from intervening to challenge criminal forfeiture of property until the ancillary proceeding following conviction and the entry of an order of forfeiture. 21 U.S.C. § 853(k); *see also* Fed. R. Crim. Pro. 32.2(b)(2). § 853(k) states that **"**[e]xcept as provided in subsection (n), no party claiming an interest in property subject to forfeiture under this section may—(1) intervene in . . . a criminal case involving the forfeiture of such property . . . or (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section."

5

As here, *Brown* involved a third-party Rule 41 motion filed while criminal forfeiture was pending. The district court held that it lacked jurisdiction over the third-party's motion for return of the money, because the motion was filed after the government filed an indictment and bill of particulars in a criminal case. *Brown*, 692 F.3d at 552. The Sixth Circuit is not alone in reaching this conclusion. *See United States v. Watts*, 786 F.3d 152, 175 (2d Cir. 2015) (holding that, beyond § 853(n)(6), the statute authorizes no challenges to forfeitability by interested third parties); *United States v. Lazarenko*, 476 F.3d 642, 648 (9th Cir. 2007) (same); *United States v. Messino*, 122 F.3d 427, 428 (7th Cir. 1997) (same).

KOGGC's Petition contains a reference to the Fourth Amendment without further analysis. To the extent KOGGC bases its Rule 41 motion on the Fourth Amendment, this Court still lacks jurisdiction. In *Brown*, the Sixth Circuit stated that the third party petitioner's "suggestion that the Rule 41(g) motion should not have been dismissed because she also sought relief for a Fourth Amendment violation is likewise unavailing." *Brown*, 692 F.3d at 553 n.1 (third party had an adequate remedy at law for any Fourth Amendment violation in the form of a suit under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)).

### a. The Government Has Met the Procedural Requirements for Criminal Forfeiture

Relying on the faulty premise that it is entitled to seek relief under Rule 41(g), KOGGC argues that the indictment fails to identify how the assets seized are connected to the alleged crimes. KOGGC, however, misunderstands the procedural requirements to initiate criminal forfeiture and, therefore, its argument fails. The forfeiture allegation in an indictment is a notice provision, and the property subject to forfeiture need not be itemized. *United States v. Lacerda*, 958 F.3d 196, 217 (3d Cir. 2020) (conclusory forfeiture allegation that tracks the language of the applicable criminal forfeiture statute is sufficient under Rule 32.2(a)). The government need not identify the nexus to the charged offense in the forfeiture allegation. *United States v. Palfrey*, 499 F. Supp. 2d 34, 48–49 (D.D.C. 2007) (if indictment is not required to list property subject to forfeiture, it would be "manifestly illogical" to require indictment to specify factual nexus between unlawful conduct and property). The government can provide notice of the specific property it seeks to forfeit in a bill of particulars. *United States v. Moffit, Zwerling & Kemler, P.C.*, 83 F.3d 660, 665 (4th Cir. 1996) ("A bill of particulars is an appropriate way to pinpoint certain assets as subject to forfeiture"). In addition, as the government identifies additional property for forfeiture, it can supplement the bill of particulars.

KOGGC's Petition also erroneously seeks to litigate the forfeitability of the property[1] based on the charges in the indictment; however, the government need not lay out its forfeiture case in the indictment. *United States v. Balsiger*, 644 F. Supp. 2d 1101, 1114–15 (E.D. Wis. 2009) (denying motion for bill of particulars detailing how government calculated the amount subject to forfeiture as fraud proceeds; government need not reveal what evidence it will introduce at trial). Further, as stated *supra,* third parties can only litigate forfeiture issues in the ancillary proceeding. *United States v. Fabian*, 764 F.3d 636, 638 (6th Cir. 2014) (rejecting a third party's argument that property lacked a sufficient nexus to defendant's fraud, because "'the sole avenue for a third party to assert an interest in forfeitable property' is a so-called 'ancillary proceeding' under § 853(n)") (quoting *United States v. Erpenbeck*, 682 F.3d 472, 480 (6th Cir. 2012) (emphasis omitted)). Some courts have permitted a narrow exception to § 853's bar to third parties intervening to challenge criminal forfeiture of property until the ancillary proceeding following the entry of an order of forfeiture. However, even those courts have held that the exception does not allow third parties to contest "the

---

[1] The government interprets KOGGC's petition at PageID.8-9 to be an attempt to litigate the forfeitability of the seized property. To the extent KOGGC challenges the probable cause for the underlying search and seizure warrants, such an argument is also improper. *See Kaley v. United States*, 571 U.S. 320, 338 (2014) ("This Court has repeatedly declined to require the use of adversarial procedures to make probable cause determinations[,]" given the inherently low standard involved).

underlying forfeitability of the property." *United States v. Real Prop. in Waterboro*, 64 F.3d 752, 756 (1st Cir. 1995) ("That would turn an ancillary proceeding into the main event—a result at odds with Congress' desire to 'assure a more orderly disposition of both the criminal case and third party claims.'") (citation omitted).

### 2.  The Government Has an Evidentiary Need for the Property

A motion for the return of property is also properly denied if the government has a continuing evidentiary need for the property. *See United States v. Stout*, 597 F. Supp. 2d. 963, 970 (S.D. Iowa 2009) (noting that law enforcement retain possession of property that is evidence in an investigation for the duration of the investigation). The case against David Taylor and Michelle Brannon is ongoing. As part of its case, the government plans to show that KOGGC, and its predecessor JMMI, obtained millions of dollars in donations each year by subjecting its victims to forced labor. The donations were deposited into bank accounts held in the names of JMMI and KOGGC. Taylor and Brannon were authorized signatories on those bank accounts and used the proceeds of the forced labor to support Taylor's extravagant lifestyle and to enrich Brannon. *See* Criminal Case, ECF No. 1. The extravagant purchases made by Taylor and Brannon—including gold, jewelry, and luxury goods—are evidence in the criminal case and must be preserved while the case is pending.

### B. The Hardship Petition Should be Denied

#### 1. Section 983(f) is Not Applicable

KOGGC seeks return of its seized property because the retention of seized assets is allegedly causing hardship to its operation. ECF No. 1, PageID.1. This argument is also flawed. As KOGGC seemingly acknowledges at ECF No. 1, PageID.11, 18 U.S.C. § 983(f) is a civil forfeiture statute, which does not apply to criminal forfeiture. *United States v. Wiese*, No. 09–20414, 2012 WL 43369, at *1 n.2 (E.D. Mich. Jan. 9, 2012) (§ 983(f) does not apply if government pursues criminal forfeiture); *United States v. Egan*, No. 10 Cr. 191(JFK), 2010 WL 3258085, at *2 n.1 (S.D.N.Y. Aug. 16, 2010) (§ 983(f) has no application in a criminal case; per § 983(a)(3)(C), government's restraint of property in a criminal case is governed by "the applicable criminal forfeiture statute").

#### 2. KOGGC Does Not Establish a Substantial Hardship that Outweighs the Need to Preserve the Assets

Even if § 983 applied here, KOGGC has not met its burden to establish a substantial hardship that outweighs the need to preserve the seized assets. Under § 983(f)(1)(D), this Court must assess the claimant's likely hardship in order to determine whether that hardship outweighs the risk of loss. *United States v. Undetermined Amount U.S. Currency*, 376 F.3d 260, 267 (4th Cir. 2004) (when claimant asks that funds be released to pay bills, the risk of loss is "almost certain" and not outweighed by the "limited" hardship of having to liquidate other assets).

10

Courts have consistently held that mere inconvenience or having to select a more economical option does not establish the substantial hardship required by 983(f). *Kaloti Wholesale, Inc. v. United States*, 525 F. Supp. 2d 1067, 1070 (E.D. Wis. 2007) (Congress meant "substantial hardship" to mean something so serious that it prevented a business from functioning; corporation from whom government seized a quantity of baby formula could not make that showing).

KOGGC has not established a substantial hardship which outweighs the government's need to preserve the seized assets under 18 U.S.C. § 983(f)(1)(D). KOGGC recites the elements of § 983(f)(1) in a conclusory fashion without offering specific supporting facts to quantify the purported hardship. KOGGC has not provided any evidence to support a "substantial need" beyond vague generalizations about the need to pay mortgages and other debt. Contrary to its vague assertions, the facts establish that KOGGC has continued to operate following the indictment of Taylor and Brannon. For example, KOGGC streams weekly services and posts other videos online. *See e.g.* https://www.youtube.com/live/LoWe4P0axpQ (Sunday service 1/18/26); https://www.youtube.com/@DavidETaylorMiraclesinAmerica/ (advertising KOGGC's 2025 Christmas toy drive, posting weekly Sunday worship services, and posting religious education videos); Attachment 1.

Further, by stating it needs funds to pay bills, KOGGC has represented to the Court that it intends to dissipate any assets returned. *United States v. $70,990,605*, 991 F. Supp. 2d 144, 153 (D.D.C. 2013) (because claimants indicate that they intend to use the money to run their business, the risk that the funds will be dissipated is almost certain). Finally, as stated *supra*, the government has an evidentiary need to maintain some of the seized property under § 983(f)(8)(B).

For all of these reasons, KOGGC has not established a substantial hardship that outweighs the near certain risk of loss if the property is returned.

## C. The Constitutional and Statutory Arguments Should be Denied

KOGGC seeks return of seized property because the government's seizures allegedly violate KOGGC's rights under the First Amendment and the Religious Freedom Restoration Act of 1993 (RFRA). ECF No. 1, PageID.1. These claims fail under the applicable legal standards.

### 1. KOGGC Lacks Article III Standing to Pursue Its Claims

KOGGC does not meet its burden to establish standing for its First Amendment and RFRA claims. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007). Article III of the United States Constitution limits federal court jurisdiction to actual cases or controversies. U.S. Const. art. III, § 2; *Raines* v. *Byrd*, 521 U.S. 811, 818 (1997). Both the First Amendment and RFRA require Article III standing. *See* 42 U.S.C. § 2000bb-1(c). To demonstrate standing,

KOGGC must allege facts demonstrating (1) an actual or imminent, concrete and particularized injury-in-fact, (2) that is traceable to defendant's conduct, and (3) that can be redressed through a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016) (quotation omitted); *see also Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 413 (D.C. Cir. 2024) (concrete and demonstrable injury must be more than simply a setback to organization's abstract social interests). KOGGC fails to satisfy the first two prongs of the standing requirement.

First, KOGGC has not alleged that it suffered an actual or imminent, concrete and particularized legal injury that is "not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339. As discussed *supra*, KOGGC continues post-seizure to engage in worship services and online streaming. And KOGGC continues to solicit and receive donations. *See e.g.* https://www.youtube.com/live/LoWe4P0axpQ (Sunday service 1/18/26); https://www.youtube.com/@DavidETaylor MiraclesinAmerica/; Attachment 1. In addition, KOGGC posts videos of current members who discuss the viability of KOGGC and their commitment to continuing KOGGC's mission. *See e.g.* https://www.youtube.com/live/ZbkOC0cBIhs. KOGGC has offered no evidence that it will not be able to continue to engage in these activities if its Petition is denied. Rather, its "generalized grievance" that it will not have enough money for its activities is too speculative to satisfy the standing requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 575 (1992)

(quotation omitted); *see also Iowaska Church of Healing*, 105 F.4th at 413 (finding that whether church may have sufficient funds in the future for its religious activities depends on decisions of third parties and is too speculative to establish standing).

Second, KOGGC is unable to show that its alleged injury is fairly traceable to the government's actions. "The 'causal connection between the injury and the conduct complained of'" must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Lujan*, 504 U.S. at 561); *see also Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021) (same). "When considering any chain of allegations for standing purposes, [a court] may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) . . . ." *Arpaio*, 797 F.3d at 21; *see also Turaani*, 988 F.3d at 316. In this case, KOGGC's loss of assets is traceable to the criminal activities of defendants Taylor and Brannon which support the government's seizure. *See Alamo v. Clay*, 137 F.3d 1366, 1368–69 (D.C. Cir. 1998) (rejecting a RFRA challenge where the church's injury was fairly traceable to the criminal conduct of its pastor, not the government). Thus, the alleged injury KOGGC complains of is not fairly traceable

to the government's action in seizing the criminal proceeds in the related criminal case but rather to the actions of defendants Taylor and Brannon.

### 2. KOGGC's First Amendment Challenge Fails

The First Amendment to the Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." For many years, free exercise claims were evaluated under the balancing test set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972), which required a court to determine whether a challenged government action imposed a substantial burden on the practice of religion and, if so, whether the action served a compelling government interest. In 1990, the Supreme Court rejected the *Sherbert* balancing test and held that neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling governmental interest. *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990); *see also City of Boerne v. Flores*, 521 U.S. 507, 514 (1997) (explaining *Smith*). Following *Smith*, it is only when a law is not neutral or generally applicable that the strict scrutiny of the *Sherbert* balancing test applies to First Amendment claims under the Free Exercise Clause. *See Church of Lukumi Babalu Aye v. City of Hilaleah*, 508 U.S. 520, 534 (1993).

In this case, the forfeiture laws that apply to the government's asset seizures are both neutral and generally applicable. The applicable forfeiture statutes are neutral because they are not "specifically directed at . . . religious practice." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022) (quoting *Smith*, 494 U.S. at 878). The forfeiture laws are also generally applicable, because they do not "prohibit[] religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way" or provide "a mechanism for individualized exemptions." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533-34 (2021).

Because the forfeiture laws are neutral and generally applicable, KOGGC's challenge under the Free Exercise Clause of the First Amendment must fail.

### 3. KOGGC's RFRA Challenge Fails

KOGGC's RFRA claim also fails. Congress responded to the Supreme Court's opinion in *Smith* by enacting RFRA, "which adopts a statutory rule comparable to the constitutional rule [the *Sherbert* balancing test] rejected in *Smith*."[2] *Gonzales v. O Centro Espirita Beneficent Uniao do Vegetal*, 546 U.S.

---

[2] The original draft of RFRA would have reached any government action that "burden[ed]" religious exercise. Congress added the qualifier "substantially" to "make it clear that the compelling interest standards set forth in the act" apply only to "substantial burden[s]" and that "pre-*Smith* law is applied under the RFRA in determining" whether a burden qualifies as substantial. 139 Cong. Rec. 26,180 (1993) (Sen. Kennedy); see *ibid.* (Sen. Hatch). Congress, thus, expected courts to "look to free exercise cases decided prior to *Smith* for guidance in determining

418, 424 (2006); 42 U.S.C. §§ 2000bb to 2000bb-4. RFRA provides that the government may not "substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," except if the government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a), 1(b).

Determining whether there has been a RFRA violation requires a two-step analysis. A person claiming a RFRA violation must first make an "initial showing" that the challenged government action "imposes a substantial burden on his religious exercise." *Hoevenaar v. Lazaroff*, 422 F.3d 366, 368 (6th Cir. 2005). This requires that the claimant establish that the challenged government action "(1) substantially burden[s], (2) a religious belief rather than a philosophy or way of life, (3) which belief is sincerely held." *General Conf. Corp. v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010) (quotation omitted). If the claimant satisfies these requirements, the challenged government action will nonetheless be upheld if the government demonstrates that the action "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that

---

whether the exercise of religion has been substantially burdened." S. Rep. No. 111, 103d Cong., 1st Sess. 8 (1993); see H.R. Rep. No. 88, 103d Cong., 1st Sess. 6-7 (1993) (same).

compelling governmental interest." 42 U.S.C. § 2000bb–1(b); *see also Burwell* v.

*Hobby Lobby Stores, Inc.*, 573 U.S. 682, 695 (2014) (*Hobby Lobby*).

### a. The Seizure of Assets is Not a "Substantial Burden" on the Exercise of Religion

The Supreme Court's decisions interpreting "substantial burden" establish

that a government action substantially burdens the exercise of religion if it (1)

requires or places substantial pressure on religious adherents to "engage in conduct

that seriously violates their religious beliefs," *Hobby Lobby Stores*, 573 U.S. at

720; (2) forces an individual to choose between "following the precepts of her

religion and forfeiting benefits," *Living Water Church of God v. Charter Twp.*

*Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007) (quotation omitted); or, according

to some courts, (3) "'effectively bar[s]' his sincere faith-based conduct," *Haight v.*

*Thompson*, 763 F.3d 554, 565 (6th Cir. 2014) (quoting *Living Water Church of*

*God*, 258 F. App'x at 739).

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is

high." *Living Water Church of God*, 258 F. App'x at 734. "[A] 'substantial burden'

is a difficult threshold to cross." *Id.* at 736. "[A] 'substantial burden' must place

more than an inconvenience on religious exercise.'" *Id.* at 739 (quoting *Midrash*

*Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A

particular government action will not be considered a substantial burden merely

because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.*

KOGGC is unable to establish a "substantial burden" under the RFRA framework. KOGGC makes sweeping assertions of the burden it faces, but it offers no facts or evidence as to how the asset seizures substantially burdens its exercise of religion in any one of the three manners noted *supra*. For example, KOGGC states that it seeks return of funds to pay "mortgages and other debt related expenses that it is unable to pay without these assets." ECF No. 1, PageID.13. Paying mortgages and debt, though, is not an exercise of religion. This is especially true when the mortgages and debts were incurred as a result of the forced labor of KOGG's victims. KOGGC also seeks release of all the precious metals, vehicles, jewelry, designer clothing, and luggage the government seized but fails to state how these items are involved in the exercise of religion. ECF No. 1, PageID.5. KOGGC also claims that the seizure of assets "substantially burdens its religious exercise by preventing or impeding worship services, limiting religious education programs, restricting charitable and community outreach activities, and impeding other faith-based activities central to the church's mission." ECF No. 1, PageID.16. But KOGGC offers no explanation or evidence as to how the asset seizure has impeded these activities. ECF No. 1, PageID.16; *United States v. Barnes*, 677 F. App'x 271 (6th Cir. 2017) (rejecting defendant's RFRA challenge to his drug-related convictions, finding that defendant had "produced no evidence" that the challenged action "forces him to choose between

religious obedience and government sanction"). To the contrary, KOGGC's YouTube channel demonstrates that KOGGC has continued to provide worship services from the time of the seizure to the present. *See e.g.* https://www.youtube.com/live/LoWe4P0axpQ (Sunday service 1/18/26); https://www.youtube.com/@DavidETaylorMiraclesinAmerica/ (advertising KOGGC's 2025 Christmas toy drive, posting weekly Sunday worship services, and posting religious education videos); Attachment 1. Indeed, "[u]nder the substantial burden analysis of RFRA, courts [have] continued to hold that indirect, financial, and aesthetic burdens d[o] not warrant judicial intervention." *Congregation Kol Ami v. Abington Twp*., No. Civ.A 01-1919, 2004 WL 1837037, at *6 (E.D. Pa. Aug. 12, 2004); *see also Braunfeld v. Brown*, 366 U.S. 599 (1961) (rejecting free exercise challenge to a government regulation that made practicing plaintiff's religion more difficult by increasing the expense); *St. Bartholomew's Church v. City of New York*, 914 F.2d 348 (2d Cir. 1990) (finding no unconstitutional burden where the church was not prevented from following its beliefs despite the fact that the church's ability to raise revenue to carry out its programs was limited); *United States v. Any & All Radio Station Transmission Equip.*, No. 00-civ-893, 2004 WL 2848532 (S.D.N.Y. Dec. 9, 2004) (rejecting RFRA challenge to forfeiture action, finding no substantial burden on free exercise of religion). Accordingly, KOGGC

has failed to establish that the government's seizure of assets is a substantial burden on its exercise of religion.

### b. The Seizure and Forfeiture Is the Least Restrictive Means of Furthering a Compelling Governmental Interest

Even if KOGGC were able to overcome the "substantial burden" hurdle, its RFRA claim would still fail because the government's action in seeking forfeiture of criminal proceeds is the least restrictive means of furthering a compelling governmental interest. As the Supreme Court has recognized, pretrial restraint of assets like the seizure the government has effected in the related criminal case, serves the compelling governmental interest of "protect[ing] the community's interest in full recovery of any ill-gotten gains" upon conviction. *United States v. Monsanto*, 491 U.S. 600, 616 (1989), and "there is a strong governmental interest in obtaining full recovery of all forfeitable assets," *Caplin & Drysdale v. United States*, 491 U.S. 617, 631 (1989). Criminal statutes, such as those the government has utilized to seize assets in the criminal case, "serve important governmental interests such as 'separating a criminal from his ill-gotten gains,' 'returning property, in full, to those wrongfully deprived or defrauded of it,' and 'lessening the economic power' of criminal enterprises." *Honeycutt v. United States*, 581 U.S. 443, 447 (2017) (brackets and citation omitted); *see also Kaley v. United States*, 571 U.S. 320, 323 (2014) ("Forfeitures help to ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and 'lessen the economic

power' of criminal enterprises.") (quotation and citations omitted). The fact that the forfeiture statutes do not contain exceptions further support the government's compelling interest in forfeiture.

Having established that the government has a compelling interest in the pretrial restraint and forfeiture of the proceeds of criminal activities, the government must show that its action was the least restrictive means of furthering this interest. 42 U.S.C. § 2000bb–1(b). The least-restrictive-means standard "requires the government to 'show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party.'" *Holt v. Hobbs*, 574 U.S. 352, 364-65 (2015). Courts have explicitly rejected KOGGC's argument that, to meet this standard, "the government must demonstrate that it has considered and rejected less restrictive alternatives" to the seizure of criminal proceeds. ECF 1., PageID.15; *see United States v. Grady*, 18 F.4th 1275, 1286 n.12 (11th Cir. 2021) ("The government does not bear the burden of proffering less restrictive alternatives or demonstrating that it actually considered and rejected those alternatives.").

Rather, the Sixth Circuit has described the least-restrictive-means test as "'the extent to which accommodation of the [plaintiff] would impede the state's objectives,' and [has] explain[ed] that '[w]hether the state has made this showing depends on a comparison of the cost to the government of altering its activity to

allow the religious practice to continue unimpeded versus the cost to the religious interest imposed by the government activity.'" *Legatus v. Sebelius*, 988 F. Supp. 2d 794, 810 (E.D. Mich. 2013) (quoting *S. Ridge Baptist Church v. Indus. Comm'n*, 911 F.2d 1203, 1206 (6th Cir. 1990)).

In this case, the cost to the government of releasing the seized assets and vacating the forfeiture proceedings would be extremely high. The government would be entirely unable to effectuate any of the substantial and compelling interests discussed *supra*. Specifically, the government would be unable to prevent the spending of the assets acquired by Taylor and Brannon's forced labor, and KOGGC would be able to freely dissipate the assets acquired by criminal activity. *See Honeycutt*, 581 U.S. at 447. By contrast, KOGGC has proffered no evidence that the cost to KOGGC's religious interest is anything other than *de minimis*.

Accordingly, the pretrial seizure of assets and the forfeiture proceedings are the least restrictive means of furthering the government's compelling interests. *See United States v. Friday*, 525 F.3d 938 (10th Cir. 2008) (rejecting a RFRA challenge to defendant's prosecution, finding that the government had a compelling interest in protecting the eagle population and the challenged statute and regulations were the least restrictive means of furthering that interest).

## **<u>CONCLUSION</u>**

The Supreme Court has long recognized the "strong governmental interest in obtaining full recovery of all forfeitable assets." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 631 (1989). This "strong governmental interest," and the foregoing arguments, show that KOGGC's Petition should be denied.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

<u>S/Adriana Dydell</u>
Adriana Dydell (CA 239516)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9125
Adriana.Dydell@usdoj.gov

Dated:  January 20, 2026

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2026, the foregoing was electronically

filed with the Clerk of the Court using the ECF system, which will electronically

serve all ECF participants.

<div style="margin-left: 40%;">

S/Adriana Dydell
Adriana Dydell (CA 239516)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9125
Adriana.Dydell@usdoj.gov

</div>