# AFFIDAVIT OF JESSICA CROSS

State of Texas           )
                         )
County of Harris         )

I, Jessica Cross, being sworn, deposes and states as follows:

1. I am competent to testify to the matters contained in this Affidavit if I am called to do so.

2. I submit this Affidavit in support of the Kingdom of God Global Church's (hereinafter "Church") Petition for Return of Property.

3. I am the bookkeeper for the Church and have worked there since 2013. I have worked in the finance department since 2015.

4. In my role as bookkeeper for the Church, I have personal knowledge of the finances of the Church, including but not limited to the finances related to its outreach operations, volunteer ministry and student housing, missionary expenses, physical building expenses and overall administrative costs. I am familiar with the impact that the government's seizure of the Church's funds has had on the Church's operations.

5. The Church operates an expansive set of ministries around the world. Church members conduct religious services in-person, online, by television and radio. Church missionaries run Prayer Lines over the phone where individuals call in for religious services.

6. Since the seizure of the Church's bank accounts in August 2025, the Church has faced a substantial burden to continuing its global, multimedia ministries.

7. The seizure of the Church's funds has caused it to stop it ability to continue broadcasting prayer services by television and radio. The church is now not able to provide religious services to individuals it was once able to.

1

8. Had the seizure not occurred, the Church would have been able to keep broadcasting these religious services.

9. Since the seizure, the Church has also faced a substantial burden in maintaining its seven buildings where it carries out its religious mission. These properties are used for church gatherings and religious services, volunteer operations, church administration, housing and boarding church members, and providing space for missionaries to work and proselytize.

10. Individuals associated with the Church as student ministers, volunteers, and pastors live in the Church owned buildings at no cost to them. Currently, there are 75 individuals that are cared for by the Church. The Church provides these individuals not just with housing but also food and daily necessities.

11. Since the seizure of the Church's funds, the amenities available to the individuals living in the Church's housing has been reduced. The Church still provides housing, but the food budget has shrunk and the availability of funds for extra services, such as medical care, have been virtually eliminated.

12. The Church has also been unable to maintain its buildings, do repairs, and pay for insurance because of the lack of funds.

13. Due to the seizure of funds, the Church will default on January 31, 2026, on its balloon payments for its mortgages secured by the property located in Tampa, Florida. *See* Exhibit A, email from lender related to that loan.

14. The potential loss of the Tampa building would be extreme hardship on the church and its congregants there.

15. On average, the cost to maintain the Church's seven buildings (and two vacant lots) is over $2.5 million per year. Over $300,000 is spent on utilities alone.

2

16. The expenses related to the individuals that live in the buildings is approximately $1 million per year. This includes over $40,000 on medical expenses, $400,000 on their food, not to mention payments for personal hygiene expenses that are paid by the Church.

17. The Church owns seven buildings in Michigan, Missouri, Florida and Texas that they are required to maintain:

    a. A building located on 20320 Superior in Taylor Michigan that is 28,000 square feet and houses a church and administrative offices.

    b. A building located on 1280 Southwest 38th Street in Ocala, Florida that is 10,000 square feet and can house up to 15-20 individuals.

    c. A building located on 706 Guisando De Avila in Tampa, Florida that is 28,000 square feet and can house up to 25 individuals. This building has been used as a training facility and secures the mortgage currently in default.

    d. A building located at 18205 Hager Lane in Chesterfield, Missouri that is 10,000 square feet houses up to 30 individuals.

    e. A building located at 15400 Timpaige Drive in Chesterfield, Missouri that is 10,000 square feet and houses up to 15 individuals.

    f. A building located at 17329 Hidden Valley Drive in Eureka Missouri that is 10,000 square feet. This property was under construction but this construction was halted when the Church's funds were seized.

    g. A building located at 14380 N. Freeway 67, Houston Texas that is 42,000 square feet. It is a former hotel, used as a campus for the ministry students/volunteers and houses up to 67 individuals.

3

18. Had the seizure not occurred, the Church would have been able to pay these balloon payments, make needed repairs, maintain its buildings, and properly care for the individuals who live in its properties.

19. The Church is also involved in numerous types of outreach for the community, called Convoy of Miracles, such as providing funds to individuals after the fires in California, tornados in Kentucky, and other miscellaneous support to those in need. The funding for these kinds of programs will also be curtailed.

20. In sum, if the Church's funds are not released, it will significantly affect its ability to continue to provide religious ministries, maintain its buildings, and care for its volunteers, students, and ministers.

Signed by: *Jessica M. Cross*     2/3/2026
Jessica Cross

## Exhibit A

---------- Forwarded message ---------
From: **Dane Valadao** <dane@reprop.net>
Date: Mon, Feb 2, 2026 at 1:51 PM
Subject: RE: Update
To: mking@wintersking.com <mking@wintersking.com>
Cc: Glenn Goldan <goldan@reprop.net>

Mike- thanks for taking my call. Pursuant to our Promissory Note, a payment of $600,000 was due by January 1, 2026. We have been in ongoing discussions with the Borrower and have agreed to a modified plan regarding the $600,000 payment; at least $250,000 by January 30, 2026, and the balance by February 16th, 2026. I should have also mentioned we are willing to waive the 10%, or $60,000, late charge if these two payments are made timely. We will agree to this modified payment schedule if the $250,000 payment is made by tomorrow.

We have been as accommodating with the Borrower as we can be during this time. Unfortunately, if payment is not made by tomorrow, we will have no choice but to refer it to our foreclosure attorney.

**Dane Valadao, COO | ReProp Financial®**
**735 4th ST, EUREKA, CA 95501 [main]**

3707 N. Marshall Way, Suite 2, Scottsdale, AZ 85251

P. O. Box 12459, Zephyr Cove, NV 89448

DRE: 01917704 | NMLS: 1018509

www.repropfinancial.com

707.444.7741 (D) | 707.834.6282 (M)

Conference Line: 707.243.8722 (no pin needed)

1